**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re Yerusha, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Case No. 24-01640 |
| | ) | |
| | ) | Judge Deborah L. Thorne |

**MEMORANDUM OPINION**

This matter is before the court on the City of Chicago's motion for allowance of an administrative expense claim, under section 503(b)(1)(A) of the Bankruptcy Code, for post-petition municipal code violations (the "Motion"). The court has reviewed the papers filed by the parties and heard oral arguments. Because the claim is necessary to perform the debtor's plan and to ensure that the debtor cannot evade the consequences of its violations of the Municipal Code, the motion is granted. A separate order will set the matter for further evidentiary hearing to determine the amount of the administrative expensive claim.

## I.    Background

On February 6, 2024, Yerusha filed a voluntary chapter 11 petition. (Dkt. No. 1). Yerusha is in the business of purchasing and selling vacant parcels of real estate in Chicago. (Fourth Amend. Small Bus. Plan, Art. 1.1, Dkt. No. 106). At the time of filing, Yerusha owned fifty-one vacant parcels in Chicago, Illinois. To date, three have been sold. (*Id*. at Art. 3.7 n.2.) Debtor's chapter 11 plan, which has not been confirmed, provides for "distributions to the holders of allowed claims from the sale of the Debtor's real estate." (*Id*. at 1-2.)

On June 10, 2025, Chicago filed its Motion for Allowance and Payment of Administrative Expense Claim. (Dkt. No. 124.) In the sixteen months since the petition was filed, the City issued citations for ninety-five violations of the Municipal Code against the

debtor.  Of those, seventy went to a hearing.  Of the seventy that were heard, forty-nine resulted in a fine. (*Id*.; *see also* Exh. D and Exh. E, Dkt. No. 138.)  When the Motion was filed, the current amount due was $35,321.78.  (Exh. B, Dkt. No. 124.)  Debtor objected to allowing the claim as an administrative expense, arguing that "[m]aintaining lots that produce no income do not [sic] and cannot be beneficial to the estate." (Dkt. No. 137 at ¶ 23.)

The court takes judicial notice of the fact that there appear to have been administrative judgments entered against the Debtor post-petition.  *United States v. Payne*, 964 F.3d 652, 656 (7th Cir. 2020) ("[I]t is well-settled that [the Court] may judicially notice court records as evidence of prior judicial actions."); *see also Fornalik v. Perryman*, 223 F.3d 523, 529 (7th Cir. 2000) (holding the same for administrative adjudications).  The City attached a number of judgments as an exhibit to its reply to the Motion.  Yerusha has not been afforded a meaningful opportunity to review and challenge individual judgments.  But Yerusha does not dispute that administrative judgments have been entered against it, so the court notes merely that judgments have been entered.

## II.   Jurisdiction

The court has subject matter jurisdiction over this objection under 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. The matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(B). Venue is proper under 28 U.S.C. § 1409(a).

## III.   Standards of Law

Administrative expenses should be granted after a hearing and a finding that they are the "actual and necessary" costs of preserving the estate.  11 USC § 503(b).  The Code describes different types of claims, the first of which is relevant here: "the actual, necessary costs and

2

expenses of preserving the estate," 11 U.S.C. § 503(b)(1)(A), which the claimant has the burden of proving by "a preponderance of the evidence." *In re Nat' l Steel Corp.*, 316 B.R. 287, 300 (Bankr. N.D. Ill. 2004). In most circumstances, courts apply a two-part test to determine whether a claim is entitled to administrative expense priority under § 503(b)(1)(A). The first part of the test is whether the debt "'arises from a transaction with the debtor-in-possession,'" and second, whether the debt is "beneficial to the debtor-in-possession in the operation of the business." *Corp. Assets, Inc. v. Paloian*, 368 F.3d 761, 773 (7th Cir. 2004) (quoting *In re Jartran, Inc.*, 732 F.2d 584, 587 (7th Cir. 1984)).

The Seventh Circuit, however, has also said that "fundamental fairness may, in appropriate circumstances, demand that a party injured in some manner by the administration of the estate be compensated pursuant to section 503." *Corp. Assets, Inc.*, 368 F.3d at 773; *see also Yorke v. N.L.R.B.*, 709 F.2d 1138, 1143 (7th Cir. 1983) (citing *Reading Co. v. Brown*, 391 U.S. 471, 482-84 (1968)). Put another way, "the actual, necessary costs and expenses of preserving the estate include certain wages and salaries, but [can also] extend to a variety of *other items*." *In re Concepts Am., Inc.*, 625 B.R. 881, 889 (Bankr. N.D. Ill. 2021) (emphasis added). In the Seventh Circuit, civil offenses, fees, and involuntary debts incurred post-petition can fall into the category of those "other items" if they preserve the estate or support plan payments. *Matter of Steenes (Steenes II)*, 942 F.3d 834, 839 (7th Cir. 2019) (holding that municipal fines for running red lights, illegal parking, and similar offenses were administrative expenses because the debtor needed his car to make plan payments).

## IV.   Discussion

In *Reading Co. v. Brown*, the Supreme Court held that considerations of fundamental fairness and logic required debtors to pay not only the *voluntary* costs of operating their businesses

3

but also involuntary claims that arose postpetition, such as those arising from involuntary torts. 391 U.S. 471, 483 (1968). The Seventh Circuit and others have held that *Reading*'s considerations of "fundamental fairness" still play a role in allowing administrative expenses under the new Bankruptcy Code, even though *Reading* was a pre-Bankruptcy Code case and Congress later legislated on the issue of administrative expenses. *Matter of Steenes (Steenes II)*, 942 F.3d 834, 836 (7th Cir. 2019). It is also significant that the phrase "actual and necessary" pre-dates the Bankruptcy Code; the wording of § 503(b)(1)(A) comes directly from § 64(a)(1) of the former Bankruptcy Act, so pre- and post-Code practice and analysis have much in common. 2 Norton Bankr. L. & Prac. 3d § 49:19 (2025).

When the circumstances of a case demand considerations of fundamental fairness, courts have applied § 503 to "avoid a situation in which a bankruptcy estate may engage in activities regulated by state law while avoiding the costs associated with that regulation." *Munce's Superior Petroleum Prods.*, 736 F.3d 567, 571-73 (1st Cir. 2013). Just a few years after the Code took effect, the First Circuit held that when a "debtor . . . deliberately continue[s] a violation of [the] law month after month presumably because it was more lucrative for the business to operate outside the [local] ordinance than within it, fairness dictates" that an "intentional act which violates the law and damages others should be" treated like an administrative expense. *In re Charlesbank Laundry, Inc.*, 755 F.2d 200, 203 (1st Cir. 1985). *See also In re Al Copeland Enterprises, Inc.*, 991 F.2d 233, 240 (5th Cir. 1993) (holding the same for penalty interest for failing to remit trust-fund taxes); *In re N.P. Mining Co.*, 963 F.2d 1449, 1458 (11th Cir. 1992) (applying § 503 to civil penalties for post-petition mining activities); *Cumberland Farms v. Florida Dep't of Envtl. Protection*, 116 F.3d 16, 21 (1st Cir. 1997) (finding a $200,000 civil fine imposed on a chapter 11 debtor for post-petition environmental violations was an administrative expense).

4

In *Steenes,* the Seventh Circuit held that the filing of a bankruptcy petition does not excuse debtors from abiding by the rule of law. Chapter 13 debtors objected to the City's demand that their vehicular fines— "for running red lights, illegal parking, and similar offenses"—be treated as administrative expenses. *Steenes II*, 942 F.3d at 836. Paying the fines, the *Steenes* debtors argued, didn't preserve the estate and was not necessary, because the cars could not be repossessed: they were protected by the automatic stay. The debtors further argued that because paying the fines didn't preserve the estate, and was not necessary, the fines should not be allowed as administrative expenses under § 503(b)(1)(A). Yerusha's argument is similar: the vacant lots are already underwater, so paying the fines does nothing to preserve the estate and provides no benefit to the debtor.

This is incorrect. Maintaining vacant lots, or paying the fines for their neglect, is a core aspect of a real estate investment enterprise like Yerusha's; the fact that investments turned out bad does not excuse a business from its duties. The *Steenes* court concluded that debtors in bankruptcy cannot avoid paying administrative expenses just because they are involuntary. *Steenes II,* 942 F.3d at 836 (quoting *Matter of Steenes (Steenes I)*, 918 F.3d 554, 558 (7th Cir. 2019)). *Steenes* was about vehicle fines, but its logic, especially in the context of *Reading* and its progeny, seems even more applicable here. Yerusha's properties are not just sitting empty; the vacant lots in residential neighborhoods are fostering unkempt weeds, accumulating garbage, possibly harboring rats, and therefore reducing property values, not to mention making life worse in other ways for the people who live in their vicinity. The Municipal Code sections under which Yerusha has been held liable through default or plea forty-nine times include:

- Chicago Mun. Code § 7-28-120(a) (2025) (uncut weeds over ten inches);

- § 7-28-740 (open lot containing substances that may "become filthy, noxious or unhealthful");

- § 10-32-050 (failure to care for parkway);

- § 7-28-750(a) (failure to provide or maintain screen fence on open lot);

- §§ 7-28-710, 720 (allowing dumping or accumulation of materials that provide potential rat harborage);

- § 7-28-780(b)(1) (allowing or causing parking in vacant lot); and

- § 7-28-060 (unsafe or unsanitary premises).[1]

(Exh. D, Dkt. No. 138.)  Based on argument and pleadings, it appears Yerusha has not fixed any of the issues nor paid any fines for which it has pleaded liable.  (Dkt. No. 124, at 4.)  Interest at 9% per year continues to accrue.  *Id*.

Fundamental fairness demands that involuntary debts for such municipal violations be treated as administrative expenses, especially because these properties are so central to this debtor's enterprise.  In *Steenes*, the Seventh Circuit concluded that because a vehicle was necessary to earn money to make plan payments, "then the costs of operating that necessary asset are themselves necessary."  942 F.3d at 839.  Yerusha argues that the lots are not necessary because they produce no income.  But Yerusha has no additional assets, making property sales the only viable option for settling its obligations to creditors.  (Dkt. No. 106.)  Similar to the debtors in *Steenes*, Yerusha cannot make future plan payments without using the lots.  Consequently, the costs of operating the lots as assets are also necessary—whether Yerusha is paying to maintain the

---

[1] The Chicago Municipal Code is available online at: https://codelibrary.amlegal.com/codes/chicago/latest/chicago_il/0-0-0-2595356.

lots or paying the price of not maintaining them.  The city has met its burden, and the municipal

fines are allowed as administrative expenses.

## V.   Conclusion

The court grants the City's motion.  The claim is allowed as an administrative expense, in

an amount to be determined.

Dated:  8/7/2025

_____

Honorable Deborah L. Thorne
United States Bankruptcy Judge